UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARY JOY LACAZE

VERSUS

WALMART STORES, INC. AND
WALMART LOUISIANA, LLC

CIVIL ACTION

NO. 20-696-JWD-EWD

**RULING ON MOTION FOR SUMMARY JUDGMENT
OF WALMART, INC., F/K/A WAL-MART STORES, INC.
AND WAL-MART LOUISIANA, LLC**

Before the Court is a *Motion for Summary Judgment* (Doc. 18) ("*Motion*") brought by Defendants Walmart, Inc., f/k/a Wal-Mart Stores, Inc. and Wal-Mart Louisiana, LLC (collectively, "Walmart"). It is opposed by Plaintiff Mary Joy Lacaze ("Plaintiff" or "Lacaze"). (Doc. 25.) Walmart filed a reply. (Doc. 28.) The Court has carefully considered the law, facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion* is granted.

**I.    BACKGROUND AND ARGUMENT OF THE PARTIES**

On February 24, 2020, at approximately 11:30 in the morning, Plaintiff was walking toward the Walmart store located at 10550 Burbank Drive in Baton Rouge, Louisiana. Plaintiff testified that she did her grocery shopping at this Walmart store and had been there "a few hundred times" before the accident. (Plaintiff's Deposition, Doc. 18-6 at 22-23.)

After parking her truck, she walked across the parking lot toward the store, intending to return some expired cookies. (Petition, Doc. 1-1 at 1, ¶¶ 3-4; Doc. 18-6 at 26-27; video of incident filed conventionally, Doc 32.) The weather was overcast but it was not raining. (Doc. 18-6 at 26.) As she reached the point where the asphalt parking lot adjoins a marked concrete crosswalk

1

immediately in front of the store's entrance, she tripped and fell forward. As she testified, "I … stubbed my foot and tried to catch myself from falling and it didn't work." (Doc. 18-6 at 27; *see also* video, Doc. 32.) A number of photographs showing the accident site were introduced in connection with the *Motion* and opposition, including the following:



(Doc. 25-8 at 2.)

Along the line that divides the concrete crosswalk from the asphalt parking lot, there is a difference in vertical elevation measured by different witnesses at different points to be between 1/4 inch to 1-1/2 inches, with the crosswalk having the higher elevation. (Plaintiff's Expert Report by William C. Stein, Doc. 25-5 at 3.) The Petition describes this dividing line as "extremely uneven." (Doc. 1-1 at 1, ¶ 4.) In her deposition, Plaintiff estimated the difference in elevation at the point she tripped to be "about an inch and a half." (Plaintiff's Deposition, Doc. 18-6 at 53-54.)[1] She could not tell if it was 2 inches. (*Id*. at 54.)

---

[1] For this exhibit, references are to the deposition page numbers, not the document page numbers.

Plaintiff states she was "looking both ways to see if anything was coming" at the time she tripped. (*Id*. at 27.) Walmart claims, however, that its surveillance video shows she was "look[ing] down at her cell phone or some other item in her purse/hands." (Doc. 18-1 at 2.) Plaintiff admitted she was not looking down at the ground at the time of the accident. (Doc. 18-6 at 28-29.)

Plaintiff admitted that "the asphalt parking lot and the crosswalk [were] of different colors and materials" and "the black pavement is clearly distinct from the reddish crosswalk." (Doc. 18-2 at 2-3, ¶¶ 9, 14; Doc. 25-1 at 2, ¶¶ 9, 14.)  Plaintiff admitted that the crosswalk was "located in a very high traffic area of the Baton Rouge Walmart store" and "[t]he purpose of the crosswalk is to provide a designated area for pedestrians to traverse across the parking lot safely." (*Id.* at ¶¶ 15, 13.)

Walmart maintains this was the "first reported incident of anyone having an accident walking across that particular crosswalk." (Doc. 18-1 at 3 (citing Affidavit of Kayla Thomason, Asset Protection Assistant Manager at this store, Doc. 18-5 at 2).) Plaintiff had no information to suggest another accident had ever occurred at that location. (Doc. 18-6 at 30.)

Walmart argues that under the controlling statute, La. R.S. 9:2800.6 (the Louisiana Merchant Liability Act), Plaintiff bears the burden of establishing that: (1) the injury-causing condition presented an unreasonable risk of harm that was reasonably foreseeable; (2) Walmart either created or had actual or constructive notice of that condition; and (3) Walmart failed to exercise reasonable care. (Doc. 18-1 at 4-5.) In gauging whether the condition presents an unreasonable risk of harm, four factors must be considered:

> The (1) utility of the thing; (2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff['s] activities in terms of its social utility, or whether it is dangerous by nature.

3

(Doc. 18-1 at 5 (quoting *Pryor v. Iberia Par. Sch. Bd.*, 10-1683 (La. 03/15/11), 60 So. 3d 594, 597).)

Applying this test to the facts of the case, Walmart argues that the utility of the crosswalk is high "because its purpose is to provide a designated area for pedestrians to traverse across the parking lot safely." (*Id.*; *see also id.* at 8-9.) The likelihood and magnitude of the risk is low because the elevation difference is "less than one inch," this is the first reported accident at the cross walk, and "the transition point between the black asphalt pavement in the parking lot and the reddish concrete crosswalk should have been obvious to" Plaintiff. (*Id.* at 5-6; *see also id.* at 9-13.) "Finally, the costs of eliminating every deviation in the parking lot at the Baton Rouge Walmart store are staggering and cost prohibitive." (*Id.* at 6; *see also id.* at 13-14.) Walmart does not address the last factor, the utility or dangerousness of Plaintiff's conduct at the time of the event.

Focusing on the alleged defect, Walmart insists that "Louisiana courts have repeatedly held that elevations of up to two inches do not present an unreasonable risk of harm, particularly where there are no prior reported accidents involving the elevation." (*Id.* at 9 (citing *Chambers v. Vill. of Moreauville,* 11-898 (La. 1/24/12), 85 So. 3d 593, 602; *Boyle v. Bd. of Supervisors, La. State Univ.*, 96-1158 (La. 01/14/97), 685 So. 2d 1080, 1082; and *White v. City of Alexandria*, 43 So. 2d 618, 620 (La. 1949)).)

Walmart points the Court to *Reitzell v. Pecanland Mall Associates, Ltd.*, 37, 524 (La. App. 2 Cir. 08/20/03), 852 So. 2d 1229, 1233 as "an identical scenario to the instant matter" where summary judgment was granted to the defendant because "the pedestrian patron must expect surface and elevation change to occur" from a "tiled area of the entrance out onto the asphalt cross walk and parking lot." (*Id.* at 11 (quoting *Reitzell*, 852 So. 2d at 1233).) The fact that the area of the alleged defect was "open and obvious" and Plaintiff admitted that she was not looking down

4

when she tripped also entitles Walmart to summary judgment. (*Id*. at 11-13 (citing, *inter alia*, *Buchanan v. Wal-Mart Stores, Inc.*, 834 F. App'x 58, 62 (5th Cir. 2020)).)

Finally, Walmart emphasizes that the cost of repairing every one-inch elevation in the parking lot would be cost prohibitive and weighs against finding that the elevation presented an unreasonable risk of harm. (*Id*. 13-14 (citing *Reed v. Wal-Mart Stores, Inc.,* 97-1174 (La. 03/04/98), 708 So. 2d 362, 366).)

In her opposition, Plaintiff states, without citation to the record, that she tripped "over an extremely uneven part of the roadway which divides the area where the crosswalk begins." (Doc. 25 at 1.)[2] In Plaintiff's Statement of Disputed Facts, she states that "[i]n the area of the parking lot where Plaintiff fell the concrete surface was 1-1/4" above the asphalt surface and within 1' of that area the difference rose to at least 1-1/2"." (Doc. 25-1 at 2, ¶ 12 (citing Plaintiff's Expert Report by William C. Stein, Doc. 18-5 at 2).)

Plaintiff argues that "the use of two distinct paving materials converging at the crosswalk in question [had] little, if any utility[.] Not warning guests of dangers of traversing the crosswalk and the associated elevation change further diminishes the utility of such a design element." (Doc. 25 at 6.) Plaintiff maintains that, even if the area was open and obvious, "the jurisprudence has recognized that case-specific factual issues may preclude summary judgment." (*Id*. (quoting *Jones v. Stewart*, 16-0329 (La. App. 4 Cir. 10/05/16), 203 So. 3d 384, 398 (internal citations omitted)).)

Plaintiff insists she was "looking out for oncoming traffic" at the time she fell. (Doc. 25 at 6.) She argues that the cost of repairing the defect is "negligible" and can be made with "minimal effort." (*Id*. at 6-7 (citation omitted).) Returning expired cookies (which she was doing at the time she fell), "would have obvious social utility to promote commerce." (*Id*. at 7.)

---

[2] Plaintiff again repeats this statement in her qualification to "Statement of Disputed Facts" number 2. (Doc. 25-1 at 1.) Her cited source for this contention is the allegation in the Petition and no record evidence is referenced.

Plaintiff contends that, as the maintainer of the parking lot and crosswalk, Walmart may be a creator of the defective area by failing to fix it after they had notice of the problem. (*Id*. at 7-8.) Plaintiff distinguishes the cases relied upon by Walmart, especially the case of *Reed v. Wal-Mart Stores, Inc., supra.*, which dealt with a difference in elevation less pronounced than in this case and "is paved differently than that in the cited case." (*Id*. at 11.) This, and other factual allegations made in connection with Plaintiff's arguments, are not supported with record citations. (*See, e.g.*, *id*. at 11 ("There are only two crosswalks for the entire parking lot. The rest of the lot is covered in asphalt, which is relatively cheap and easy to maintain. . . . Moreover, the paint striping on the crosswalk areas was recently repainted within the last few months, so apparently the cost of maintenance in the area is not prohibitive.").)

Plaintiff argues that the defective joint where the accident happened is demonstrated through her expert's report that shows that the elevation differential violated federal standards including Occupational Safety and Health Administration ("OSHA") and Americans with Disabilities Act ("ADA") standards as well as Walmart's own policies. (*Id*. at 13-14.) She argues that the corporate policy is "more stringent than that contemplated by any Louisiana statute" and that Walmart assumed or undertook that duty which it then violated. (*Id*. at 14.)

In reply, Walmart argues that Plaintiff wrongly identifies the joint between the crosswalk and the parking lot as the item whose utility must be considered when it is, in reality, the crosswalk, which has been recognized to have high utility. (Doc. 28 at 2.) Walmart points out that much of Plaintiff's argument (*e.g.*, that she was looking for oncoming traffic and that the crosswalk was faded, worn, and barely visible) is contradicted by the video. (*Id*. at 3.) "Plaintiff cannot contradict what is clearly seen on the video to create an issue of fact to defeat summary judgment. (*Id*. at 4 (citing *McDowell v. Wal-Mart Stores, Inc.*, 811 F. App'x 881, 883 (5th Cir. 2020)).)

6

Walmart maintains that Plaintiff's argument regarding notice and knowledge of the defect is a red herring since the question is not notice but whether the area created an unreasonable hazard, which it didn't. (*Id*. at 4, 11-12.) The case law cited in its original briefing and repeated here shows that a 1-1/4" to 1-1/2" difference in elevation does not present an unreasonable risk of harm. (*Id*. at 4-5.) Walmart vehemently disagrees with Plaintiff's suggestion that it is the cost of repairing only the alleged defect in question that is dispositive when caselaw clearly shows it is the cost of eliminating all such defects on the property in question that is the relevant consideration. (*Id*. at 5-7 (citations omitted).)

Plaintiff's account that she was looking for oncoming traffic when she tripped is belied by the video but, in any event, whether she was engaged in a dangerous activity is not dispositive of the question of unreasonable risk of harm. (*Id*. at 7-8.) Although Plaintiff argues (citing *Reed*, 708 So. 2d at 364) that whether a condition presents an unreasonable risk of harm is considered a mixed question of law and fact, "the Louisiana Supreme Court has repeatedly clarified in later cases that summary judgment is indeed appropriate when a plaintiff presents no evidence that a condition is unreasonably dangerous or poses an unreasonable risk of harm." (*Id*. at 8 (citing *Bufkin v. Felipe's Louisiana, LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851, 854 (La. 2014)).)

While Plaintiff suggests that there is a question of fact as to the exact elevation at the point at which she tripped, that issue is irrelevant because even if the highest possible elevation (1.25 inches) is correct, "Louisiana courts have repeatedly held that elevations of up to two inches do not present an unreasonable risk of harm." (*Id*. at 11.) Plaintiff's expert's opinion regarding possible violation of ADA and OSHA regulations are likewise insufficient to defeat summary judgment when the condition was open and obvious. (*Id*. (citing *Primeaux v. Best W. Plus Houma Inn,* 18-0841 (La. App. 1 Cir. 02/28/19), 274 So. 3d 20, 30).) Finally, whether Walmart failed to

7

follow its own policies regarding the parking lot is of no moment since this goes to the issue of reasonable care, a separate element under La. R.S. 9:2800.6(B). (*Id.* at 12 (citing *Leger v. Wal-Mart Stores, Inc.*, No. 08-120, 2009 WL 196225, at * 2 (W.D. La. Jan. 23, 2009), *aff'd sub nom. Leger v. Wal-Mart Louisiana, LLC*, 343 F. App'x. 953 (5th Cir. 2009)).)

## II.    STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations and emphasis omitted).

If, as here, the dispositive issue (in this case, whether the injury-causing condition presented an unreasonable risk of harm) is one on which the nonmoving party bears the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential part of the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). Stated another way, "[w]here the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating ... that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (internal quotation marks omitted).

In such a case, the party moving for summary judgment is not required to "negate the elements of the nonmovant's case," but may "satisfy [its] burden under *Celotex*" by "assert[ing the] absence of facts supporting the elements of the plaintiffs' theory of recovery." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc); *see also Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) ("[I]t has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case."); *Sanchez v. Am. Pollution Control Corp.*, 542 F. Supp. 3d 446, 450 (E.D. La. 2021).

Once the mover has met its burden, the burden shifts to the nonmoving party who must establish that a genuine issue of material fact exists. *See Am. Pollution Control*, 542 F. Supp. 3d at 450 (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' " *Mudrick v. Cross Equip. Ltd.*, 250 F. App'x 54, 56 (5th Cir. 2007) (quoting *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986))). Stated another way, "[s]ummary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party." *Barnes v. Vannoy*, No. 19-764, 2022 WL 562793, at *1 (M.D. La. Jan. 31, 2022), *report and recommendation adopted sub nom. Barnes v. Vanoy*, No. 19-764, 2022 WL 554655 (M.D. La. Feb. 23, 2022) (citing *Little*, 37 F.3d at 1075).

The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (citations and internal

9

quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S. Ct. 1348. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

### III. DISCUSSION

Generally, under Louisiana law, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. Rev. Stat. § 9:2800.6(A). To establish liability, a claimant must prove:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. Rev. Stat. § 9:2800.6(B).

Here, Walmart focuses its *Motion* on the first factor, whether Plaintiff has raised a question of fact regarding whether the accident site presented an unreasonable risk of harm.

> To determine ... whether a condition presented an unreasonable risk of harm[,] the Louisiana Supreme Court has adopted a risk-utility balancing test containing four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in

10

terms of social utility or whether the activities were dangerous by nature." *Martin v. Boyd Racing, L.L.C.,* 681 F. App'x 409, 411 (5th Cir. 2017) (per curiam) (quoting *Bufkin v. Felipe's La., L.L.C.*, 14-0288 (La. 10/15/14); 171 So. 3d 851, 856) *Hotard v. Sam's E., Inc.*, No. 19-304, 2021 WL 2700381, at *5 (M.D. La. June 30, 2021) (deGravelles, J.).

### A. Utility of the Parking Lot and Crosswalk

The Court agrees with Walmart that parking lots clearly have utility. *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La. 3/4/98), 708 So. 2d 362, 366 ("the utility of paved parking lots is clearly apparent as unpaved parking lots would present far more hazards: potholes, wheel ruts, erosion damage, and infinite variations in elevation"); *see also Hotard*, 2021 WL 2700381, at *7 (accord). Crosswalks in parking lots have a high utility. Plaintiff in this case correctly admits that this crosswalk was "located in a very high traffic area of the Baton Rouge Walmart store" (Doc. 18-2 at ¶ 15; Doc. 25-1 at ¶ 15), and this is borne out in reviewing the video preceding the accident (Doc. 32). Plaintiff also properly admits that "[t]he purpose of the crosswalk is to provide a designated area for pedestrians to traverse across the parking lot safely." (Doc. 18-2 at ¶ 13; Doc. 25-1 at ¶ 13.)

Plaintiff attempts to address this part of the unreasonableness test by arguing that "the use of two distinct paving materials converging at the crosswalk in question [had] little, if any utility[.] Not warning guests of dangers of traversing the crosswalk and the associated elevation change further diminishes the utility of such a design element." (Doc. 25 at 6.) The Court disagrees. Regardless of the two materials used, the placement of a crosswalk in front of a busy retail center serves the laudable purpose of allowing pedestrians entering the store to do so safely and with a reduced risk of being struck by vehicular traffic.

### B. Likelihood and Magnitude of Harm, Including the Obviousness and Apparentness of the Condition

11

The extent and seriousness of the alleged hazardous condition is a factor in measuring the likelihood and magnitude of possible harm. Here, the primary defect complained of is what Plaintiff describes as the "extremely uneven" area separating the asphalt parking lot from the cement crosswalk. (Doc. 1-1 at 1, ¶ 4.) In her deposition, Plaintiff estimated the difference in elevation at the point she tripped to be "about an inch and a half." (Plaintiff's Deposition, Doc. 18-6 at 53-54.) Actual measurements taken of the area by various persons show an elevation differential of between 1/4 inch to 1-1/2 inches, with the crosswalk having the higher elevation. (Plaintiff's Expert Report by William C. Stein, Doc. 25-5 at 3.)[3]

The Fifth Circuit recently had the opportunity to consider the appeal of the district court's denial of the plaintiff's motion to amend the complaint following a summary judgment granted in favor of Wal-Mart where the plaintiff tripped over an uneven portion of the parking lot pavement, estimated by the plaintiff to be between 1-1/2 to 2 inches in height. *Buchanan v. Wal-Mart Stores, Inc.*, 834 F. App'x 58, 59 (5th Cir. 2020). In approving the district court's granting of summary judgment, the Fifth Circuit observed:

> The district court found, based on Louisiana case law, that Buchanan could not establish a genuine dispute of material fact regarding whether the uneven pavement constituted an unreasonable risk of harm, an essential element of her claim. See *Chambers v. Vill. of Moreauville*, 85 So. 3d 593, 598 (La. 1/24/12) ("Louisiana jurisprudence has consistently held that a one-and-one half inch deviation does not generally present an unreasonable risk of harm."); *Reed v. Wal-Mart Stores, Inc.*, 708 So. 2d 362, 365-66 (La. 3/4/98) (height variance of one-fourth to one-half inch between concrete blocks in parking lot did not present an unreasonable risk of harm); *Boyle v. Bd. of Sup'rs, La. State Univ.*, 685 So. 2d 1080, 1082-84 (La. 1/14/97) (depression of up to one inch in a sidewalk did not pose unreasonable risk of harm); *Leonard v. Par. of Jefferson*, 902 So.2d 502, 505 (La. App. 5 Cir. 4/26/05) (sidewalk height differential of one inch to one-and-one-third inch did not present unreasonable risk of harm); *White v. City of Alexandria*, 216 La. 308, 43 So. 2d

---

[3] Although Plaintiff's expert measured the elevation difference at "the approximate location where the accident occurred," as being 1-1/4 inch (Doc. 25-5 at 3), the Court has used Plaintiff's estimate of 1-1/2 inches in order to "draw[ ] all inferences in favor of the nonmoving party." *Int'l Shortstop*, 939 F.2d at 1263.

12

618, 619-20 (1949) (variance of one-half to two inches on a sidewalk did not present unforeseeable risk of harm).

*Buchanan v. Wal-Mart Stores, Inc.*, 834 F. App'x 58, 62 (5th Cir. 2020).

The court in *Buchanan* noted more generally that "[i]t is common for the surfaces of streets, sidewalks, and parking lots to be irregular." *Reed*, 708 So. 2d at 363. "It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations...." *Buchanan*, 834 F. App'x at 63 (quoting *Reed*, 708 So. 2d at 363).

Other considerations in measuring the magnitude of risk and harm include whether the condition "existed for several years;" whether "it was located in a high traffic area" and whether "the plaintiff was the only person ever reported to have fallen there." *Chambers v. Village of Moreauville*, 11-898 (La. 01/24/12), 85 So. 3d 593, 598. The likelihood and magnitude of possible harm also

> "focuses on whether the dangerous or defective condition is obvious and apparent." [*Martin v. Boyd Racing, L.L.C.*, 681 F. App'x at 411 (quoting *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13); 113 So. 3d 175, 184). "If the defective condition is obvious and apparent, a defendant generally does not have a duty to protect against it." *Id.* (citing *Bufkin*, 171 So. 3d at 856). "To be considered open and obvious, the hazard must 'be one that is open and obvious to all, i.e., everyone who may potentially encounter it.' " *Id.* (quoting *Broussard*, 113 So. 3d at 184).

*Hotard*, 2021 WL 2700381, at *5

After analyzing the evidence in the record, the Court finds that the likelihood and magnitude of the risk posed by this condition was low. First, drawing all inferences in favor of Plaintiff, the maximum height of the elevation differential at the site of the accident was 1-1/2

inches which, as discussed above, has generally been found insufficient to pose an unreasonable risk of harm in this kind of environment.[4]

Plaintiff argues, however, that the lack of visible striping on the crosswalk also rendered the risk of harm to Plaintiff unreasonable. "The striping in the crosswalk area had worn so much that it was not visible at the location where the fall occurred." (Doc. 25 at 2; *see also id*. at 13 ("[T]he paint … was completely weather[ed] away where the fall occurred.").) Here, the Court agrees with Walmart (Doc. 28 at 3), that the video and the photographs show that the concrete crosswalk is clearly distinct from the parking lot. It is also apparent from the photograph embedded in this ruling (Doc. 25-8 at 2), that there is a slight height differential between the parking lot and crosswalk. Furthermore, Plaintiff admitted that "the asphalt parking lot and the concrete crosswalk [were] of different colors and materials" and "the black pavement is clearly distinct from the reddish crosswalk." (Doc. 18-2 at 2-3, ¶¶ 9, 14; Doc. 25-1 at 2, ¶¶ 9, 14.) The Court concludes from all the record evidence that the condition was " 'open and obvious to all, i.e., everyone who may potentially encounter it.' " *Chambers*, 85 So. 3d at 598 (quoting *Broussard*, 113 So. 3d at 184).

The Court's conclusion that the magnitude and risk of injury posed by the condition was low is bolstered by the affidavit of Walmart Asset Protection Manager Kayla Thomason (Doc. 18-5 at 1), who stated she was unaware of any previous accidents at this location. (*Id*. at 2, ¶ 13.) Further, Plaintiff testified that, while it was "a little overcast" at the time of the accident (Doc. 18-6 at 26), the accident occurred at about 11:30 a.m. when it was daylight (*id*. at 24). She was extremely familiar with this store, living five or six minutes away (Doc. 18-6 at 22), frequently grocery shopped there, and had visited the store hundreds of times (*id*. at 23).

---

[4] The Court stresses that the height of the elevation is only one factor of the four-part test, and it is certainly possible that a height differential of 1-1/2 inches or less might, in a different setting, pose an unreasonable risk of harm.

14

While Plaintiff testified that she was looking for traffic at the time she stubbed her toe and fell (Doc. 18-6 at 29-30), the video shows she was looking at something in her purse (Doc. 32). "[W]hen a party's testimony 'is blatantly contradicted by the record [such as by a videotape], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.' " *McDowell v. Wal-Mart Stores, Inc.*, 811 F. App'x 881, 883 (5th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).[5] In any event, Plaintiff admitted she was not looking down at the time of the fall. (Doc. 18-6 at 28-29.)

Whether a condition poses an unreasonable risk of harm has been described by the Louisiana Supreme Court as " 'a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.' As a mixed question of law and fact, it is the fact-finder's role—either the jury or the court in a bench trial—to determine whether a defect is unreasonably dangerous." *Broussard v. State ex rel. Office of State Bldgs.*, 12-1238 (La. 4/5/13), 113 So. 3d 175, 183 (citation omitted). However, as this Court explained,

> But the Fifth Circuit [has] rejected plaintiff's argument based on *Broussard* itself and later Louisiana Supreme Court cases. As to the former, the Fifth Circuit stated:
>
>> In addition to the reasoning relied on by [plaintiff], the Broussard court acknowledged other decisions in which it stated that "[i]t is the court's obligation to decide which risks are unreasonable based on the facts and circumstances of each case." [*Broussard*, 113 So. 3d at 183 n.5 (*quoting Pryor v. Iberia Parish Sch. Bd.*, 10-1683, p. 4 (La. 3/15/11)); 60 So. 3d 594, 596]. It noted that in one of those cases, decided on a motion for summary judgment, "it was the court's obligation ... to decide if there was a genuine issue of material fact as to whether [the condition] created an unreasonable risk of harm." [*Id.*] Thus, the *Broussard* court recognized that on a motion for summary judgment, as here, the court *can* decide that a condition does not present an unreasonable risk of harm, as a matter of law.

---

[5] Where video evidence is equivocal or subject to multiple interpretations, the correct interpretation of same should be left to the jury. *Richard v. Wal-Mart Stores, Inc.,* No. 17-285, 2018 WL 4608481, at *2 n.26. (M.D. La. Sept. 25, 2018).

15

> *Martin*, 681 F. App'x at 412.
>
> As to the latter, the Fifth Circuit quoted *Bufkin*, which "explained that Broussard 'should not be construed as precluding summary judgment when no legal duty is owed because the condition encountered is obvious and apparent to all and not unreasonably dangerous.' " Id. (quoting *Bufkin*, 171 So. 3d at 859 n.3). Critically, the Fifth Circuit also relied on *Allen v. Lockwood*, 14-1724 (La. 2/13/15); 156 So. 3d 650 (per curiam), which said that "[a]ny reading of Broussard interpreting it as a limit on summary judgment practice involving issues of unreasonable risk of harm is a misinterpretation of the *Broussard* case." *Martin*, 681 F. App'x at 412 (quoting *Allen*, 156 So. 3d at 652–653). "In both *Bufkin* and *Allen*, the court recognized that whether a condition created an unreasonable risk of harm was an appropriate issue for summary judgment." *Id*. at 413 (citing *Allen*, 156 So. 3d at 652–53; *Bufkin*, 171 So. 3d at 859 n.3). "In both cases, the court reversed the district court and granted summary judgment for the defendants, concluding that the at-issue conditions were 'obvious and apparent to anyone who may potentially encounter' them." *Id*. (quoting *Allen*, 156 So.3d at 653, and citing *Bufkin*, 171 So.3d at 858-59).

*Hotard*, 2021 WL 2700381, at *6.

Plaintiff argues that a material issue of fact is raised by her expert's report which opined that "[t]he surface where Ms. Lacaze tripped and fell, becoming injured … was not in compliance with the Americans with Disabilities act [sic] (ADA) nor with the Occupational Safety and Health Administration (OSHA) [and] [t]he adversity encountered by Ms. Lacaze should not have happened." (Doc. 25-5 at 2; *see also* Plaintiff's Opposition, Doc. 25 at 13-15.) Plaintiff provides no case authority showing that these standards apply or are relevant to a shopper like her or that she can overcome the above-cited Louisiana Supreme Court and Fifth Circuit cases finding that nearly identical conditions do not, as a matter of law, present an unreasonable risk of harm. Walmart, on the other hand, points the Court to *Primeaux v. Best W. Plus Houma Inn,* 18-0841 (La. App. 1 Cir. 02/28/19), 274 So. 3d 20, 30 (granting summary judgment in favor of the defendants despite the plaintiff's expert report which purported to show the condition was in violation of the ADA and Life Safety Code NFPA 101 because, in part, "the purported code

16

violations identified by [the plaintiff's safety expert] have no bearing on the issue of whether the alleged defect was open and obvious.").

Finally, Plaintiff argues that Walmart failed to follow its own policies which stated that "[a]t a minimum, Walmart is committed to complying with applicable environmental, health and safety (EH&S) laws and other requirements in the countries where we operate." (Doc. 25 at 14.) It is true that "[a] duty of protection which has been voluntarily assumed must be performed with due care." *Saldana v. Larue Trucking, LLC*, 52,589 (La. App. 2 Cir. 4/10/19), 268 So. 3d 430, 437, *writ denied*, 2019-00994 (La. 10/1/19), 280 So. 3d 159 (citing, *inter alia*, *Harris v. Pizza Hut of La., Inc.*, 455 So.2d 1364 (La. 1984)). But the Court agrees with Walmart that this argument addresses the issue of Walmart's alleged failure to use reasonable care, a separate and independent issue than the one before the Court, i.e., whether the condition in question presented an unreasonable risk of harm. (*See* Doc. 28 at 12 (citing *Leger v. Wal-Mart Stores, Inc.*, No. 08-120, 2009 WL 196225, at *2 (W.D. La. Jan. 23, 2009), *aff'd sub nom. Leger v. Wal-Mart Louisiana, LLC*, 343 Fed. App'x 953 (5th Cir. 2009) (stating that the alleged failure of Wal-Mart employees to follow their own procedures "mistakes the 'reasonable care' requirement of 9:2800.6 which is not at issue in this motion" with another requirement of La. R.S. 9:2800.6(B)).)

### C. The Cost of Preventing the Harm

In *Reed v. Wal-Mart Stores, Inc.,* 97-1174 (La. 03/04/98), 708 So. 2d 362, 366, the Louisiana Supreme Court rejected the plaintiff's argument that this factor of the test considers only the cost of fixing the specific defect which injured the plaintiff.

> Contrary to the plaintiff's contention that "the defect could have easily been remedied for a minimal amount," the cost to eliminate all such minor defects is staggering. Plaintiff's argument incorrectly assumes that the defendant need only have smoothed the joint at issue. Such a contention simplistically overlooks the reality of the situation. A defendant would have to be able to accurately foresee which crack an individual would trip over. Even an elimination of all such elevation

17

deviations in this entire parking lot would fall short of repairing the defect. To avoid liability, this defendant would have to either eliminate all such "defects" in all of its parking lots and sidewalks or cease doing business.

*Reed*, 708 So. 2d at 366.

It is certainly possible that, in other situations, the Court or jury might need to consider only the cost of fixing the specific injury-causing defect. But, in the situation before the Court, it is the cost of eliminating all defects in the Walmart lot which must be considered. This factor therefore weighs in favor of Walmart.

### D. The Nature of Plaintiff's Activities in Terms of Social Utility or Whether the Activities were Dangerous by Nature

Here, Plaintiff was merely returning some expired cookies to the store from which she had purchased them. The Court agrees with Plaintiff that this is not a "dangerous activity" and that this ordinary commercial activity has social utility.

### E. Summary

The Court concludes that all factors save one point this Court to a single conclusion. The 1-1/2 inch elevation difference between the parking lot and crosswalk did not, under all the surrounding circumstances, pose an unreasonable risk of harm. The utility of the parking lot, and especially the crosswalk, was high. The likelihood and magnitude of harm was low, and the condition in question was open and obvious. The cost of correcting all such deficiencies in the parking lot would be high. And while Plaintiff was certainly engaged in normal, utilitarian, and non-dangerous conduct as she returned the expired cookies to the store, all the factors considered together weigh heavily in support of the Court's conclusion that the injury-causing condition did not present an unreasonable risk of harm.

## IV. Conclusion

For the foregoing reasons, the *Motion for Summary Judgment* (Doc. 18) filed by Defendants Walmart, Inc., f/k/a Wal-Mart Stores, Inc. and Wal-Mart Louisiana, LLC is **GRANTED**, and Plaintiff's case is **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on September 13, 2022.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**